# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEITH CRESSMAN, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | NO. CIV-11-1290-HE |
| ) | |
| MICHAEL C. THOMPSON, in his official ) | |
| capacity as Secretary of State and Security ) | |
| and as the Commissioner of Public ) | |
| Safety for the State of Oklahoma, *et al.,* ) | |
| ) | |
| Defendants. ) | |

## ORDER

Plaintiff Keith Cressman filed this action pursuant to 42 U.S.C. §§ 1983, 1988 and 51 Okla. Stat. § 251 against Michael C. Thompson, Secretary of Safety and Security and the Commissioner of Public Safety for the State of Oklahoma, Paula Allen, a licensing services hearing officer with the Oklahoma Department of Public Safety, Thomas Kemp Jr., Jerry Johnson, and Dawn Cash, Chairman, Vice-Chairmen and Secretary-member of the Oklahoma Tax Commission, and Kerry Pettingill, Chief of the Oklahoma Highway Patrol.[1]  Plaintiff challenges Oklahoma statutes which prohibit him from covering the image on the standard passenger vehicle license plate of a Native American shooting an arrow, which he alleges to be repugnant to his religious beliefs.

In his first amended complaint plaintiff alleges defendants have deprived him of his

---

[1] *Allen was sued in both her individual and official capacities.  The other defendants were sued only in their official capacities.*

First[2] and Fourteenth Amendment rights and his rights under the Oklahoma Religious Freedom Act ("RFA").  He seeks injunctive and declaratory relief and nominal damages.  Along with his complaint, plaintiff filed a motion seeking a preliminary injunction.  Defendants have filed motions to dismiss, arguing, among other things, that plaintiff lacks standing and that the complaint fails to state a claim upon which relief can be granted.  The various motions are fully briefed and at issue.  The court concludes plaintiff's motion should be denied, the motion of defendants Thompson and Allen granted, and the case dismissed.[3]

Background

In this action plaintiff is challenging 47 Okla. Stat. § 4-107[4] and §1113[5] because, he

---

[2]*Plaintiff asserts a claim for compelled speech in violation of the First Amendment and a claim under the Free Exercise Clause of the First Amendment.*

[3]*Plaintiff did not request an evidentiary hearing and the court concludes one is not required as defendants' response to plaintiff's motion creates no genuine issue as to a material fact.  Ty, Inc. v. GMA Accessories, Inc., 132 F.3d 1167, 1171 (7th Cir. 1997); see Reynolds and Reynolds Co. v. Eaves, 1998 WL 339465, at *3 (10th Cir. 1998) (unpublished) ("Reynolds has failed to cite any Tenth Circuit authority that requires a district court to hold an evidentiary hearing prior to granting or denying a preliminary injunction motion.).*

[4]*The statute provides in pertinent part that : "A person who removes a license plate from a vehicle or affixes to a vehicle a license plate not authorized by law for use on said vehicle with intent to conceal or misrepresent the identity of the vehicle or its owner shall, upon conviction, be guilty of a misdemeanor."  47 Okla. Stat. § 4-107(d).*

[5]*Section 1113 provides further regulations regarding vehicle license plates, including a requirement that: "The license plate, decal and all letters and numbers shall be clearly visible at all times. The operation of a vehicle in this state, regardless of where such vehicle is registered, upon which the license plate is covered, overlaid or otherwise screened with any material, whether such material be clear, translucent, tinted or opaque, shall be a violation of this paragraph." 47 Okla. Stat. §1113(2).*

asserts, they "compel him to speak and express on his car license plate a message that is contrary to his sincerely held religious beliefs." Plaintiff's brief, p. 1.[6] His claims are based on the alleged effects of an image he alleges to be based on a sculpture called "Sacred Rain Arrow." The image appears on the State of Oklahoma's standard vehicle license plates.[7] As described by plaintiff, the sculpture "depicts a young Native American shooting an arrow towards the sky with the hope of calling for rain from the 'spirit world.'" First Amended Complaint, ¶19. It is based, plaintiff states, on a Native American legend in which a warrior went to a medicine man during a drought, convinced him to bless his bow and arrows and then shot his arrows into the sky, hoping to gain favor with the rain god. Plaintiff asserts that "the image depict[s] and communicate[s] Native American religious beliefs in contradiction to his own Christian religious beliefs." *Id.* at ¶21. Because the "message, connotation and purpose" of the sculpture and the license plate with its image are "antithetical to Cressman's sincerely-held religious beliefs," plaintiff alleges he cannot display the image on his vehicle. *Id.* at ¶26. He "wants to remain silent with "images, messages, and practices that he cannot endorse or accept," *id.* at ¶27, and does not want his car to serve as a billboard for them.

While he originally purchased a specialty license plate to avoid displaying the "standard license plate with the objectionable message," plaintiff states he decided he did not

---

[6]*The pertinent facts are taken from the first amended complaint and plaintiff's affidavit, which is attached to his preliminary injunction motion.*

[7]*In his pleadings, plaintiff refers to the image as the Sacred Rain Arrow image. However, there is no writing on the license plate linking the image to the sculpture or referring to the image by that or any other name. For purposes of the litigation, the court will refer to the image as the Native American image.*

want to continue to pay extra to "avoid expressing a message contrary to his religious beliefs." *Id*. at ¶¶ 28, 29. On December 7, 2009, he went to the Motor Vehicle Division of the Oklahoma Tax Commission to determine if he could cover up the image of the sculpture on his license plate without violating state law. He alleges he spoke with a clerk and explained his religious objections to the image on the license plate. The clerk told plaintiff he would probably get a ticket but suggested he check with the enforcing officer at the Department of Public Safety ("DPS"). Plaintiff then proceeded to DPS and spoke with defendant Paula Allen, an official alleged to be "in charge of interpreting policies for the Department of Public Safety." *Id*. at ¶31. He again explained his religious objections, asked if he could cover the image of the sculpture on his license tag without violating the law and asked, if such action was illegal, what law he would be violating. Ms. Allen directed plaintiff to 47 Okla. Stat. § 4-107, which, she stated, prohibited the concealment of any portion of the licence plate, tag or frame. With plaintiff present, Ms. Allen called an official with the Highway Patrol, who confirmed that plaintiff would be subject to prosecution if he covered the image of the sculpture on the license plate.

According to the complaint, after he left DPS plaintiff reviewed 47 Okla. Stat §§ 4-107 and 1113 and concluded he could not conceal the Native American image without violating the law and subjecting himself to criminal sanctions. Plaintiff alleges that to comply with the law and "avoid endorsing a message contrary to [his] religious beliefs," he is "being forced to pay fees for a specialty license plate." Id. at ¶ 42. In an effort to avoid litigation plaintiff, through counsel, wrote several state officials, explaining his objection to

the Native American image and asking that he be permitted to cover it up or obtain a free vanity plate. He alleges no one responded.

Plaintiff asserts that, "[d]ue to the steadfast stance of Oklahoma officials, [he] must either pay extra amounts of money for a speciality plate, subject himself to criminal penalties, or go against his conscience." Plaintiff's brief, p. 6. He states that he simply wants to be treated like all other Oklahoma citizens and be allowed to "display a license plate at a standard cost without expressing a message contrary to his earnest religious beliefs." *Id*. He asks the court to enjoin defendants Thompson and Allen and their agents and employees from applying 47 Okla. Stat. § 4-107 or § 1113 to him and to order them to allow him to cover up the Native American image on his license plate. Alternatively, he asks the court to compel defendants and their agents and employees to provide him with a vanity license plate for the same price as a standard license plate.

## Standing

Before the court addresses the merits of plaintiff's motion for injunctive relief, it must consider defendants' argument that plaintiff lacks standing.[8] "The Supreme Court's 'standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, ... and prudential standing which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" Wilderness Soc'y v. Kane Cnty., 632 F.3d 1162, 1168 (10th Cir. 2011) (quoting Elk Grove Unified Sch. Dist. v. Newdow, 542

---

[8]This and several other arguments were raised by defendants in their motion to dismiss.

5

U.S. 1, 11 (2004))). This case presents a question of Article III standing, which, to establish, a plaintiff must show "(1) that he or she has 'suffered an injury in fact;' (2) that the injury is 'fairly traceable to the challenged action of the defendant;' and, (3) that it is 'likely' that 'the injury will be redressed by a favorable decision.'" Awad v. Ziriax, 670 F.3d 1111, 1120 (10th Cir. 2012) (quoting Ariz. Christian Sch. Tuition Org. v. Winn, ___ U.S. ___, (2011)).

Plaintiff's allegations suffice to establish standing to pursue this case. Plaintiff alleges he has had to incur the additional expense of purchasing a specialty license plate to avoid driving a vehicle with a tag bearing what he considers to be an objectionable image. Also, while he has not been arrested, plaintiff has been informed by state officials that covering up the image is a violation of Oklahoma law, specifically 47 Okla. Stat. § 4-107. *See* Consumer Data Indus. Ass'n v. King, ___ F.3d ___, ___ , 2012 WL 1573563, at *2 (10th Cir. 2012) ("[T]he existence of a statute implies the threat of its enforcement, and the association was entitled to bring a pre-enforcement challenge based on the probability of future injury."). He has shown that he was unable to obtain a waiver of § 4-107's enforcement from the State, his injuries are traceable to the enforcement of state law,[9] and a favorable judgment from this court would redress his injuries. *See id*. (complete redressability not required); Weinbaum

---

[9]*Defendants have not asserted that what plaintiff seeks to do – cover up the Native American image on his license plate – would be permissible under State law or allowed by law enforcement officials. Their silence is this regard, coupled with the lack of response to plaintiff's March 10, 2010, letter, suffices to demonstrate that plaintiff faces a credible threat of prosecution if he covers up a portion of his license tag. See* King, *___ F.3d at ___ n.1, 2012 WL 1573563 at *4 n.1 ("The threat of injury may be negated by the government defendant's renouncing any intention to enforce the challenged law.").*

v. City of Las Cruces, 541 F.3d 1017, 1028-29 (10th Cir. 2008).[10]

Preliminary Injunction

To prevail on his motion for a preliminary injunction, plaintiff "must show that four factors weigh in his favor: '(1) [he] is substantially likely to succeed on the merits; (2) [he] will suffer irreparable injury if the injunction is denied; (3) [his] threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.'" Awad, 670 F.3d at 1125 (quoting Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC, 562 F.3d 1067, 1070 (10th Cir. 2009)).[11] Plaintiff claims he is likely to succeed on the merits of his First Amendment claim because 47 Okla. Stat. §4-107 and 1113 "require him to express an objectionable message from his car license plate while his conscience requires him to do otherwise." Plaintiff's brief, p. 7. He asserts that the government cannot compel the speech of private citizens and that he satisfies the three components of a compelled speech claim, which he identifies as– private speech;[12] compelled

---

[10]*Although the issue is not raised by defendants, the court concludes the case is ripe for review. Plaintiff has demonstrated " a credible threat of enforcement, and should not be required to await and undergo [enforcement] as the sole means of seeking relief." King, ___ F.3d at ___ (internal quotations omitted); Awad, 670 F.3d at 1124 ("[I]f a threatened injury is sufficiently imminent to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied.") (internal quotations omitted).*

[11]*Defendants argue that plaintiff seeks a disfavored injunction, which would be subject to a more strenuous preliminary injunction standard. See Awad, 670 F.3d at 1125. While it appears the relief sought principally involves only the issuance of a prohibitory injunction, the court need not decide the issue because plaintiff fails to satisfy the requirements of the less demanding traditional preliminary injunction test.*

[12]*The court has treated the license plate as private, rather than government, speech. Defendants' argument to the contrary is based on cases involving specialty license plates, whose vehicle owners, unlike plaintiff here, elected to disseminate the displayed message. While the*

speech; and that the speaker's interest in remaining silent outweighs the government's interest in compelling the speech.[13] While the court does not question the sincerity of plaintiff's religious convictions, it nonetheless concludes he has not met his burden of demonstrating that he has been forced to engage in compelled speech and "be an instrument for fostering public adherence to an ideological point of view he finds unacceptable." Wooley v. Maynard, 430 U.S. 705, 715 (1977),

The Constitution's prohibition on compelled speech was first recognized by the Supreme Court in West Virginia State Bd. of Education v. Barnette, 319 U.S. 624 (1943). Recognizing that the First Amendment shields more than written or spoken words, the Court held in Barnette that a state law compelling schoolchildren to salute the flag and recite the Pledge of Allegiance was unconstitutional. In Wooley, 430 U.S. at 705, the Supreme Court again addressed the issue of compelled speech when it struck down a New Hampshire law requiring passenger vehicles to bear license plates with the state motto "Live Free or Die." It concluded a state could not "constitutionally require an individual to participate in the dissemination of an ideological message by displaying it on his private property in a manner and for the express purpose that it be observed and read by the public." *Id.* at 713. While

---

*continuing validity of Wooley might be questioned for various reasons, including the proliferation of speciality license plates, the court is bound by the Supreme Court's conclusion that standard license plates implicate private speech interests because of the connection of any message on the plate to the driver or owner of the vehicle.*

[13]*Plaintiff based his request for injunctive relief solely on his First Amendment compelled speech claim. He does not discuss his free exercise or Fourteenth Amendment claims in his briefs, and there is nothing alleged to suggest any claim that is different, in substance, from his compelled speech claim.*

the Supreme Court has further developed the doctrine of compelled speech in other contexts, e.g. Johanns v. Livestock Mktg. Ass'n, 544 U.S. 550 (2005) (government-compelled subsidy of government's own speech), the issue here, as framed by the plaintiff, is whether he, like the plaintiffs in Wooley, is being compelled by the State to convey an ideological message.

This factual scenario falls within the class of cases the Supreme Court has characterized as "true 'compelled speech' cases," those "in which an individual is obliged personally to express a message he disagrees with, imposed by the government." Johanns, 544 U.S. at 557. Plaintiff claims that he is being forced to use his own "private property as a 'mobile billboard'" for a religious message or "suffer a penalty." Wooley, 430 U.S. at 715. However, this case is distinguishable from Wooley in that it involves "symbolic speech," rather than written or verbal expression. Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001) ("The First Amendment protects not only verbal and written expression, but also symbols and conduct that constitute 'symbolic speech.'"). "[T]he compulsion to which [plaintiff] objects does not involve words, which convey a clear ideological message." Troster v. Pennsylvania State Dep't of Corrections, 65 F.3d 1086, 1091 (3d. Cir. 1995). While symbols and conduct can fall within the scope of the First and Fourteenth Amendments, they must be "'sufficiently imbued with elements of communication.'" Zalewska, 316 F.3d at 319 (quoting Texas v. Johnson, 491 U.S. 397, 403 (1989)).

To establish his claim, plaintiff must show the State's "intent [through its use of the Native American image] to convey a 'particularized message' along with a great likelihood

that the message will be understood by those viewing it." Zalewska v. County of Sullivan, 316 F.3d 314, 319 (2nd Cir. 2003); Spence v. Washington, 418 U.S. 405, 409-11 (1974) (conduct may be "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments," if "[a]n intent to convey a particularized message was present, and in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." ); Littlefield, 268 F.3d at 283; Colacurcio v. City of Kent, 163 F.3d 545, 549 n. 1 (9th Cir.1998); see Holloman v. Harland, 370 F.3d 1252, 1270 (11th Cir. 2004) (applying liberalized Spence test which asks, in determining whether conduct is expressive, "whether the reasonable person would interpret it as some sort of message, not whether an observer would necessarily infer a specific message"). The image need not, though, "necessarily embody 'a narrow, succinctly articulable message.'" Zalewska, 316 F.3d at 319 (quoting Hurley v. Irish American Gay, Lesbian and Bisexual Group of Boston, 515 U.S. 557, 569 (1995)).[14]

Plaintiff assumes, with minimal discussion, that he is being required to disseminate an ideological message.[15] Having examined the State's standard license plate, which is

---

[14]*Some courts have interpreted the Supreme Court's subsequent decision in Hurley, 515 U.S. at 557, to have liberalized the Spence test. Others have not. Compare Troster, 65 F.3d at 1090 with Colacurcio, 163 F.3d at 549 n. 1. Regardless of the test applied, plaintiff cannot demonstrate that driving a vehicle with a standard Oklahoma license tag is "sufficiently imbued with the elements of communication to fall within the scope of the First and Fourteenth Amendments." Zalewska, 316 F.3d at 319.*

[15]*The court recognizes that "First Amendment protection does not hinge on the ideological nature of the speech involved." Axson-Flynn v. Johnson, 356 F.3d 1277, 1284 n.4 (10th Cir. 2004); see Corder v. Lewis Palmer Sch. Dist. No. 38, 566 F.3d 1219, 1230 (10th Cir. 2009) ("'[C]ompelled statements of fact ... like compelled statements of opinion, are subject to first Amendment*

described in the First Amended Complaint and a photograph of which is attached as Exhibit D to plaintiff's preliminary injunction motion, the court disagrees.

The challenged image "depict[s] a statute of a Native American shooting an arrow into the sky." Defendants' Exhibit 5.[16] Plaintiff argues that it communicates a message about Native American religion, attesting that the

> sculpture and image on the license plate retell the story of this Native American who believed in sacred objects and in multiple deities and in the divinity of nature and in the ability of humans to use sacred objects to convince gods to alter nature. The underlying narrative of this story, and of the license plate where the story is depicted, communicates the promotion of pantheism, panentheism, polythiesm, and/or animism and promotes those particular Native Americans' social and cultural practices that accept these religious ideas.

Plaintiff's motion, ¶ 14. However, plaintiff states in his amended complaint that he "learned that the image on the license plate was a depiction of a sculpture called 'Sacred Rain Arrow' by Allen Houser," First Amended Complaint, ¶ 22, and "learned" that the sculpture was

---

*scrutiny.'") (quoting <u>Rumsfeld v. Forum for Academic & Institutional Rights, Inc.</u>, 547 U.S. 47, 62 (2006)). Plaintiff comments in his brief that his First Amendment rights can be violated even if he does not "object to the particular ideological viewpoint communicated," plaintiff's brief, p. 11 n.7, or if the State is forcing him to express a message "about its history or individualism or life or freedom," rather than about religion. Id. at p. 17. However, plaintiff's claims in this case are based on his assertion that he is being forced to convey an objectionable religious message. See e.g. First Amended Complaint, ¶1 ("This is a civil rights action challenging 47 Okl. St. § 4-107 and 47 Okl. St. § 1113 that compel Plaintiff Keith Cressman to express a message on the license plate of his vehicle that is contrary to his sincerely-held religious beliefs."). See generally <u>Troster</u>, 65 F.3d at 1091 n.2 ("Although other Supreme Court cases involved First Amendment challenges to required statements that were not ideological, . . . . these are more properly viewed as 'compelled disclosure' cases, rather than 'intellectual individualism' cases like <u>Barnette</u>, <u>Wooley</u>, and <u>Abood</u>.").*

[16]*In addition to the Native American image and the tag number, "Oklahoma" appears at the top of the tag and "Native America" at the bottom. Plaintiff does not discuss the significance or impact of the words "Native America." They do not, though, add support to his argument that the license plate is signaling a religious message.*

based on a Native American Legend. Nothing on the tag indicates that the image is based on a sculpture or that the arrow is sacred or the reason why it is being shot.[17] While plaintiff clearly links the image to the sculpture and legend, nothing on the license plate, itself, makes or suggests that connection. It is only through further independent research of the sort plaintiff alleges he undertook, that a person would learn the underlying facts and circumstances which plaintiff alleges to constitute the offensive message. But even assuming a reasonable observer knew of the image's genesis, the court still would not find that the observer would likely view the driver of a car with a standard Oklahoma license plate to be telling him anything about the driver's religious beliefs. *Cf.* Holloman, 370 F.3d at 1270 ("Even if students were not aware of the specific message Holloman was attempting to convey, his fist clearly expressed a generalized message of disagreement or protest directed toward [the teacher], the school, or the country in general.").

Hundreds of thousands of Oklahoma residents drive vehicles with license tags that display the Native American image. *See* Troster, 65 F.3d at 1090 (in determining whether conduct is protected by the First Amendment the court considers "'the nature of [the] activity, combined with the factual context and environment in which it was undertaken.'") (quoting Spence, 418 U.S. at 409-10). While the Supreme Court did not consider that fact significant in Wooley, at least one court has subsequently considered the prevalence of an

---

[17]*The State's name is derived from two Choctaw words literally meaning "red people." See About Oklahoma, http://travelok.com/about_us. As the Tenth Circuit noted in Weinbaum, 541 F.3d at 1033 n.18: "American towns, cities, and counties commonly incorporate the subject matter of their name into their seals and flags. . . . [T]he City of Palo Alto, which translates as 'Tall Tree,' displays a tall tree on its seal."*

image when considering its expressive or communicative effect.

In Troster the Third Circuit had to determine whether a state employee, who was required by a Pennsylvania State Department of Corrections regulation to display an American flag patch on his uniform, was "engag[ing] in any conduct sufficiently imbued with elements of communication that the regulation might be forbidden by the First Amendment's proscription against compelled speech. Troster, 65 F.3d at 1087. Troster objected to being compelled to display the flag because he "believe[d] that state-compelled display desecrates the flag and debases it." Id. at 1088. The appellate court concluded that it was "not apparent from the record that the conduct required of Troster—passively wearing the flag patch—is ... demonstrative of an attitude or belief." Id. at 1091. The court disagreed with Troster that it was "readily inferable that wearing a flag patch on a corrections officer's uniform would be seen by most, if not all, observers as showing respect for the flag." Id. at 1091 n.4 (internal quotations omitted). The court noted that "Troster was one of an entire force of corrections personnel required to wear the flag patch on their uniforms," id. at 1092, and there was evidence that "the uniforms of a large number of organizations ha[d] flag patches on them." Id. The court also noted that, "[i]n contrast to Wooley, Barnette, and Abood,[18] the compulsion to which Troster objects does not involve words . . . ." Id. at 1091.

The Third Circuit's decision was based in part on Troster's failure to provide any evidence "suggesting that anyone (other than himself) would be likely to view the wearing

---

[18]Abood v. Detroit Bd. of Educ., 431 U.S. 209 (1977).

of the patch as communicative or expressive, or that people who wear such uniforms with such flag patches actually assert anything to anyone." Id. at 1092. Here, even if plaintiff had produced evidence that others might perceive him to be signaling a message about his religious beliefs by driving a car bearing the standard Oklahoma license plate, the court would still conclude that plaintiff has not been coerced to speak in violation of the First Amendment. A reasonable viewer simply could not glean a religious message from the Native American image on the license plate or impute such to the driver. Observers of the image "are presented with a symbol that has various and somewhat imprecise ideas associated with it." Id. at 1091. They are not presented with a "particularized message" that is likely, much less highly likely to be "understood by those who view[] it." Pierce v. Heuckendorf, 1994 WL 170791 at * 2 (10th Cir. 1994) (unpublished) (quoting Spence, 418 U.S. at 410-11).

Support for this conclusion is found in cases in which courts have found an individual's use of a symbol to be expressive. For example, in Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503 (1969), the Supreme Court concluded that "the wearing of black armbands in a school environment conveyed an unmistakable message about a contemporaneous issue of intense public concern-the Vietnam hostilities." Spence, 418 U.S. at 410. Similarly the student in Spence was found to have been expressing an idea when he displayed a flag bearing a peace symbol, as his "activity was roughly simultaneous with and concededly triggered by the Cambodian incursion and the Kent State tragedy, also issues of great public moment." Id.

The Supreme Court has cautioned that it "cannot accept that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *Id.* at 409 (internal quotations omitted). *See generally* Weinbaum, 541 F.3d at 1038[19] ("[W]e need not ask whether there is any person who could find an endorsement of religion ... or whether some reasonable person might think [the State] endorses religion. Instead, we must simply view the symbol through an objective observer's eyes.") (internal quotations and citations omitted). Yet that is essentially what plaintiff is asking the court to do here. Though the Native American image conceivably sends a message on some level, it is not a particularized message that viewers will likely understand. Unlike the State of New Hampshire, the State of Oklahoma is not, through the image of the Native American on its license plates, attempting to "foster[] public adherence to an ideological point of view," or "disseminate an ideology." Wooley, 430 U.S. at 715, 717. *See generally* Weinbaum, 541 F.3d at 1035 ("The effect of these symbols is to identify the cities by referring (via pictographic shorthand) to the cities' name.").[20]

---

[19]*Weinbaum involved an Establishment Clause challenge to a city seal and other public property that displayed, in various forms, three crosses.*

[20]*While it appears the Supreme Court has found a violation of the First Amendment right against compelled speech only "in the context of forced speech that requires the private speaker to embrace a particular government-favored message," Miller v. Mitchell, 598 F.3d 139, 152 n.14 (3d Cir. 2010) (internal quotations omitted), appellate courts have "held that the First Amendment right against compelled speech is not limited to the government's requiring a speaker to express a certain viewpoint or message; requiring content-neutral speech may violate the First Amendment." Id; see Axson-Flynn, 356 F.3d at 1284 n.4. While the "harm occurs regardless of whether the speech is ideological," Axson-Flynn, 356 F.3d at 1284 n.4, there still must be "speech" involved to trigger First Amendment protection.*

15

The conclusion that the State of Oklahoma is not "compelling others to espouse ... certain ideas and beliefs," Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trs., 235 F.3d 1243, 1247 (10th Cir. 2000), and the related conclusion that the State, via the Native American image on its standard license plate, is not forcing plaintiff to convey a message that violates his religious beliefs, preclude plaintiff from establishing an essential element of his free speech claim and from obtaining injunctive relief.[21]   The lack of "compelled speech" also fatally undermines plaintiff's Free Exercise and Due Process claims.  As a result plaintiff's allegations, assumed to be true, fail "to state a [federal] claim to relief that is plausible on its face."  Corder v. Lewis Palmer Sch. Dist. No. 38, 566 F.3d 1219, 1224 (10th Cir. 2009) (internal quotations omitted).

The failure to state a claim controls the result both as to plaintiff's request for a preliminary injunction and defendants' motion to dismiss.  Accordingly, plaintiff's motion for preliminary injunction [Doc. #3] is **DENIED** and the motion to dismiss filed by defendants Thompson and Allen [Doc. #31] is **GRANTED**.[22]  The deficiencies in plaintiff's claims are legal in nature rather than anything that can be cured by further pleading. Plaintiff's claims asserted under the First and Fourteenth Amendments are therefore

---

[21]*As plaintiff has not shown he is substantially likely to prevail on the merits of his free speech claim, it is unnecessary to address the remaining elements that must be established for a preliminary injunction to issue.*

[22]*While the primary focus of defendants' brief was not on the question of whether there was compelled speech, the issue was discussed.  See Doc. #17, pp. 15 -16, Doc. # 38, p. 7.  Protected speech also is an essential element of plaintiff's claim, which he had to establish (or show a likelihood of establishing) to obtain injunctive relief.*

dismissed with prejudice pursuant to Fed.R.Civ.P. 12(b)(6). The court declines to exercise supplemental jurisdiction over plaintiff's claim asserted under the Oklahoma Religious Freedom Act, which is dismissed without prejudice. The motion to dismiss filed by defendants Kemp, Jr., Johnson and Cash [Doc. #35] is **DENIED** as being moot.

**IT IS SO ORDERED**.

Dated this 16th day of May, 2012.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE