# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KEITH CRESSMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-11-1290-HE |
| | ) | |
| MICHAEL C. THOMPSON, in his official | ) | |
| capacity as Secretary of State and Security | ) | |
| and as the Commissioner of Public | ) | |
| Safety for the State of Oklahoma, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

In this case, plaintiff Keith Cressman has sued various officials of the Oklahoma Department of Public Safety (the "DPS defendants") and the Oklahoma Tax Commission ("the OTC defendants") in their official capacities,[1] alleging a § 1983 claim for violation of his constitutional rights. He principally seeks to enjoin the enforcement of 47 Okla. Stat. § 1113 as to him,[2] arguing that he faces prosecution for violation of that statute if he covers the image depicted on the state's standard automobile license plate.

The image at issue is that of a Native American shooting a bow and arrow, which has appeared on the standard Oklahoma license plate since January 2009. Plaintiff asserts that the image communicates a religious message contrary to his own Christian religious beliefs,

---

[1]*Plaintiff originally asserted a claim against Paula Allen, a DPS official, in her individual capacity. That claim was dismissed by the court. Order, November 20, 2013 [Doc. #89].*

[2]*The amended complaint actually challenged both 47 Okla. Stat. § 1113 and 47 Okla. Stat. § 4-107. However, as the Court of Appeals noted in its prior order in this case, only § 1113 actually appears to apply to plaintiff's preference and intention to cover up the image on the standard license plate. Plaintiff does not appear to challenge that assumption and now focuses only on § 1113.*

in violation of his First Amendment rights against compelled speech. Specifically, he alleges that the image on the license plate:

> "effectively retells the story of a Native American who believes in sacred objects and in multiple deities and in the divinity of nature and in the ability of humans to use sacred objects to convince gods to alter nature. The underlying message of this story, and of the license plate where the story is depicted, communicates the promotion of pantheism, panentheism, polytheism, and/or animism and those particular Native Americans' social and cultural practices that accept these ideas."

First Amended Complaint [Doc. #20, para. 25].

In earlier proceedings, this court denied plaintiff's request for a preliminary injunction and dismissed the case, concluding that the complaint failed to state a claim upon which relief could be granted. Cressman v. Thompson, 871 F. Supp. 2d 1176 (W.D. Okla. 2012). On appeal to the Tenth Circuit Court of Appeals, that court reversed, concluding that a claim was stated, and remanded the case for further proceedings. Cressman v. Thompson, 719 F.3d 1139, 1142-43 (10th Cir. 2013). As part of the further proceedings after remand, plaintiff renewed his request for a preliminary injunction. The court combined the hearing on that request with trial on the merits, which is now set for January 9, 2014. In the meantime, plaintiff, the DPS defendants, and the OTC defendants have filed motions for summary judgment. Those motions are now at issue.

## Background

The bulk of the background facts are substantially undisputed. In 2007, the Oklahoma legislature established a task force to study and choose a new design for the official Oklahoma license plate. 47 Okla. Stat. § 1113.3. The task force selection was to be

2

communicated to the Oklahoma Tax Commission which, contingent on statutory authorization, was directed to use the new design on plates issued thereafter. *Id.*

The task force considered a number of designs, including two which included images based on a sculpture made by Allen Houser, an Oklahoma-born artist considered one of the foremost sculptors of the twentieth century. Houser's sculpture is entitled the "Sacred Rain Arrow" and is located at the Gilcrease Museum in Tulsa, Oklahoma.[3] The plate design ultimately selected included an image very similar to, but not identical to, the "Sacred Rain Arrow" sculpture.[4] The image was placed on the left side of the standard Oklahoma license plate. [Doc. #95-6] is a copy of the standard plate and is attached to this opinion.

In August 2008, plaintiff saw an online article in the *Tulsa World* describing the Oklahoma Tax Commission's announcement of the new tag design. The OTC announcement was that "the new plate features the Sacred Rain Arrow sculpture by Oklahoma artist Allen Houser . . . ." Based on that news story and others he read, which included descriptions of the background of the statue and Houser's explanation of it, plaintiff indicates he was immediately offended by the prospect of having the image on his vehicle.[5]

---

[3]*The parties' stipulation [Doc. #92] indicates eight sculptures were made from the original casting. One is at the Gilcrease Museum. Another is in the Smithsonian National Museum of the American Indian in Washington, D.C.*

[4]*The Houser statue depicts a Native American shooting an arrow almost straight up into the air. See [Doc. Nos. 97-6 & 97-7]. The image on the Oklahoma license plate depicts a Native American in a slightly different kneeling position, with the position of the bow and arrow at approximately a 60 degree angle relative to the ground or horizontal plane. See [Doc. # 95-6].*

[5]*Plaintiff indicates that he "stridently" objects to having the image on his license plate. [Doc. Nos. 98, para. 46 & 65-1, para. 10].*

3

Plaintiff has had specialty plates on his personal vehicles for some time, including times prior to the adoption of the new plate design. He purchased a vehicle in 2009 that, for a time, displayed a standard plate but later got a specialty plate for it. By December 2009, plaintiff had concluded that he did not want to pay for a specialty plate any longer. Plaintiff's evidence indicates he contacted Tax Commission and DPS personnel about his concerns with the plate and image, inquiring as to whether he could cover up the subject image on the plate.[6] According to him, he was told that it appeared he could not legally cover the image and would be subject to prosecution if he did.[7] Later, through counsel, plaintiff contacted the state attorney general's office seeking authorization to cover up the image, but received no response to that letter. This lawsuit followed.

## Discussion

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating a motion, the court views the evidence and any reasonable inferences that might be drawn from it in the light most favorable to the nonmoving party. Davidson v. Am. Online, Inc., 337 F.3d 1179, 1182 (10th Cir. 2003). The question is

---

[6]*There is a factual dispute as to this. Plaintiff's evidence is that he talked to Paula Allen, a DPS official, about whether Oklahoma law would prevent him from covering up the image on a license plate. She denies meeting with him, but recalls meeting with someone else apparently on a similar topic.*

[7]*It appears to overstate the case to say he was "threatened" with prosecution. There is no indication anyone "threatened" him in any menacing sense; there is evidence that Allen or someone at least told him it appeared he would be subject to prosecution if he covered the image.*

4

whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Jeffries v. Kansas, 147 F.3d 1220, 1228 (10th Cir. 1998) (internal quotations omitted).

The defendants' motions for summary judgment will be addressed first. For the most part, the defendants do not address the substantive merits of plaintiff's claim, but rely on procedural or other defenses.

The OPS defendants argue that plaintiff lacks Article III standing to assert the present claims. They previously raised essentially the same argument both in this court and with the Court of Appeals. Both courts rejected the challenge. *See* Cressman, 871 F. Supp. 2d at 1180 *and* 719 F.3d at 1144-45. It is unclear whether defendants are now simply preserving their position in some fashion or whether they suggest there is some basis for avoiding, in the present procedural posture, the impact of those prior decisions.[8] However, the factual matters addressed in defendants' motion do not appear to undercut the basis for the standing determination previously made. Accordingly, there is no apparent basis for now concluding that plaintiff lacks standing to pursue the claims he asserts.

The OPS defendants argue that the image on the license plate, if it is speech at all,[9]

---

*[8]The OPS brief does not mention, much less discuss, the impact of the Court of Appeals' determination, which is the law of this case. It is true, as noted in the OPS brief, that a party's ability to allege a factual basis for standing does not mean they will necessarily be able to prove those facts, but the court can discern nothing in defendants' submissions which undercuts, as a matter of undisputed fact, the basis for standing alleged by plaintiff. He has proffered at least some evidence of the various factors identified by this court and the Circuit as the basis for standing.*

*[9]Contrary to plaintiff's suggestion, the OPS defendants do not appear to unequivocally concede that the image is "speech" of some kind. While the OPS brief makes no effort to grapple*

is government speech rather than private speech and hence may not be the basis for a First Amendment claim in plaintiff's favor. The court is at a loss to understand why defendants continue to devote significant time and argument to this issue. The argument is precluded by the decision of the U. S. Supreme Court in <u>Wooley v. Maynard</u>, 430 U.S. 705 (1977). That decision may very well be inconsistent with later First Amendment cases decided by the Court and some aspects of its reasoning seem particularly questionable in light of those cases.[10] But all that is quite beside the point. As this court and the Tenth Circuit both noted, the Supreme Court has not repudiated <u>Wooley</u> and it is not clear that it would do so if presented with the issue. And even if this court were not already of that mind, the fact that the Tenth Circuit has now reached the same conclusion makes that conclusion the law of the case.[11] Bottom line, the Supreme Court has determined that a message conveyed via a standard state license plate can be the basis for a First Amendment compelled speech claim if the appropriate circumstances are otherwise present. Defendants' "government speech"

---

*with the issue in any meaningful way, it suggests the image is "probably" not compelled religious speech at all. See [Doc. #95, pg. 34, heading D].*

[10]*The Court's conclusion that a person driving an automobile with a required, standard state-issued license plate is somehow promoting the government's message, but that a person using money with "In God We Trust" on it does not, strikes the court as forced to say the least. See <u>Wooley</u>, 430 U.S. at 717, n. 15. Indeed, the idea that a person displaying a required, standard plate is somehow endorsing the government's message seems decidedly counterintuitive.*

[11]*The OPS defendants suggest that the "law of the case" concept is discretionary, citing <u>Kennedy v. Lubar</u>, 273 F.3d 1293, 1299 (10th Cir. 2001). That case involved the merits panel of the Court of Appeals revisiting an issue previously addressed by a motions panel of the same court. It is no doubt true that a court may revisit its own rulings in the course of a case. It is something else again to suggest, tantalizing as it may be, that a district court has the discretion to ignore a ruling of the Court of Appeals in the same case.*

argument fails as a basis for summary judgment.

The OPS defendants also raise various arguments that seem to assume that plaintiff is asserting, in substance, a Free Exercise claim in the sense that the act, or potential act, of covering up the image on the plate is itself protected First Amendment expression. Plaintiff's response makes clear that is not the claim he is asserting. His First Amendment claim is a compelled speech claim, within the meaning of Wooley and other cases.[12]

The OTC defendants argue that the court lacks subject matter jurisdiction to consider plaintiff's claims against it, on the basis of the Tax Injunction Act (the "TIA"), 28 U.S.C. § 1341.[13] That section provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

The TIA is jurisdictional. *See* Marcus v. Kan. Dep't of Revenue, 170 F.3d 1305, 1308-09 (10th Cir. 1999). It is designed to preclude undue interference by the federal judiciary in matters affecting the administration of state tax laws. Chamber of Commerce of U.S. v. Edmondson, 594 F.3d 742, 761 (10th Cir. 2010).

To the extent that plaintiff seeks an order from this court directing the OTC to issue

---

[12]*Plaintiff's amended complaint purports to state two claims as Free Speech claims (the first and third claims). The difference between them, if any, is not clear, but both appear to be based on plaintiff being compelled to convey a message he does not agree with.*

[13]*Oddly, defendants' description of the TIA and the discussion of its application is in the brief submitted by the DPS defendants [Doc. #95] rather than the brief of the OTC defendants [Doc. #96], which makes a "failure to exhaust" argument but cites nothing in support of it.*

7

a specialty plate to him without the additional charge applicable to specialty plates,[14] the court concludes the TIA does deprive the court of jurisdiction to enter such an order. The Tenth Circuit has concluded that the primary purpose of Oklahoma's system for issuing specialty plates is raising revenue rather than regulation, and that the revenues constitute a "tax under State law" within the meaning of the TIA. Hill v. Kemp, 478 F.3d 1236 (10th Cir. 2007).[15] As such, the exhaustion requirement of the TIA applies and plaintiff does not dispute defendants' contention that various means exist under state law for challenging the tax scheme. It is also undisputed that plaintiff has not pursued any of those means. And contrary to plaintiff's suggestion, the exhaustion requirement is not suspended here just because this is a suit brought under § 1983. While there is no exhaustion requirements for § 1983 cases generally, there is such a requirement for § 1983 cases which fall within the parameters of the TIA. Brooks v. Nance, 801 F.2d 1237, 1239 (10th Cir. 1986). Moreover, it seems clear that an order to issue a specialty plate without the necessary fee effectively enjoins or suspends the collection of the tax. In these circumstances, the TIA prevents the court from awarding any relief involving an order for the issuance of a no-cost (or no extra cost) specialty plate.

---

[14]*The amended complaint does not specifically seek this relief and there is no apparent basis for defendants' description of such relief as plaintiff's "preferred remedy." However, that relief may well be embraced within the more generally phrased portions of the plea for relief and is, in any event, discussed in plaintiff's motion for preliminary injunction [Doc. #65].*

[15]*The Oklahoma statutes relating to specialty plates have been amended since Hill was decided, but the changes do not appear to impact the basis for the conclusion that the TIA applies. Plaintiff does not suggest the contrary.*

It is unclear whether plaintiff seeks any relief as to the OTC defendants beyond, potentially, a cost-free specialty plate. The parties submissions do not suggest that the OTC has any responsibility for the enforcement of 47 Okla. Stat. § 1113, the statute which appears to be the essential enforcement mechanism plaintiff objects to and it may well be that only the DPS defendants have any potential role in the enforcement of that section. However, as the parties' briefs do not squarely address that question, the court concludes for present purposes only that the court lacks jurisdiction to consider any request for an order directing the OTC to issue a specialty plate to defendant without the fees ordinarily accompanying such plates.

To the extent that the OPS defendants argue for a broader exhaustion requirement (i.e. for claims outside the scope of the TIA), the court concludes no such requirement applies here. There is a general principle of law that exhaustion of administrative remedies is required prior to resorting to court. McCarthy v. Madigan, 503 U.S. 140, 144-45 (1992); Massengale v. Okla. Bd. of Examiners in Optometry, 30 F.3d 1325, 1328 (10th Cir. 1994). However, that general rule does not apply to § 1983 cases, based in part on Congressional intent as to whether an exhaustion requirement should apply to such claims. Patsy v. Bd. of Regents of State of Fla., 457 U.S. 496 (1982).[16] Exhaustion principles do not support judgment for either defendant except to the limited extent noted above, based on the TIA.

---

[16]As noted above, in that subset of § 1983 cases within the parameters of the TIA, there is an explicit Congressional expression to the contrary—exhaustion is required as to cases within its scope.

9

In sum, the summary judgment motion of the OTC defendants will be granted to the extent plaintiff seeks the issuance of a cost-free specialty plate. Defendants' motions otherwise provide no basis for summary judgment in their favor and will be denied.

Plaintiff's motion must similarly be denied. It argues that the image on the license plate is "pure speech" and necessarily subject to First Amendment protection, suggesting that Bery v. City of New York, 97 F.3d 689 (2d Cir. 1996), has so concluded and that the Tenth Circuit has "acknowled[ged] the authority" of Bery. In fact, the Tenth Circuit has done no such thing. Its discussion in Christiansen v. Park City Mun. Corp., 554 F.3d 1271, 1276-77 (10th Cir. 2009) stopped short of endorsing the reasoning of Bery[17] and its discussion in this case cited Bery as an example of how courts have struggled to define the extent of First Amendment protection to visual artwork, noting other approaches and that the Second Circuit itself has since questioned Bery's conclusion. Cressman, 719 F.3d at 1153 n. 14. The court declines to enter judgment now based on what is, in this Circuit, at most an open question and which is addressed only superficially in the parties' briefs.[18]

Plaintiff argues that, even if the image is not pure speech, it is nonetheless expressive symbolic speech subject to First Amendment protection. He argues that a particularized, understandable message is no longer required for the image to be protected, as Hurley v.

---

[17]*See Christiansen, 554 F.3d at 1276 ("If the First Amendment principles set forth by the Second Circuit in Bery v. New York apply, as the district court seemed to assume, we are inclined to think . . . . But this assumes that Bery, or some close equivalent, is an accurate statement of the law."). The court later, at 1278, referred to the issue as an "open and significant" issue of constitutional law.*

[18]*As to defendants' briefs, it would be more accurate to say the issue is addressed not at all.*

10

Irish-American Gay, Lesbian and Bisexual Group of Boston, 515 U.S. 557 (1995), has modified the "particularized message" formulation expressed in Spence v. Washington, 418 U.S. 405 (1974) and Texas v. Johnson, 491 U.S. 397 (1989). Here, disputed questions of fact remain which preclude summary judgment under either the Spence-Johnson standard or some more relaxed test.[19] Plaintiff suggests the image itself is of such a nature that it conveys a message, religious or otherwise, that others would understand. As was the case when initially confronted with this case, the court can discern nothing in the image itself which suggests any religious message. Contrary to plaintiff's suggestion, the kneeling figure does not appear to be, or to at least clearly be, in a "praying" or in a "prayerful" position. The figure and the position of the bow and arrow does not clearly (and maybe not at all) suggest seeking favor with the rain gods or that rain is being sought or that some spiritual message is being conveyed.[20] Plaintiff offers some evidence from which a fact-finder might conclude that others would view the image as conveying a religious or other message,[21] but it certainly

---

[19]*None of the post-Hurley cases cited by the plaintiff or by the Tenth Circuit in Cressman appear to completely abandon the Spence-Johnson formulation of a "particularized" message, but, in one way or another, suggest that a too-narrow or too-particularized formulation should not be required.*

[20]*As noted above, the position of the bow and arrow in the license plate image is different from the angle in the Houser sculpture. To someone not versed in research as to the history of the actual "Sacred Rain Arrow" statue, the image appears as consistent (and maybe more consistent) with the Native American man shooting his arrow into a buffalo herd or wagon train or just shooting, than it does with a religious message. In any event, for present purposes, it suffices to say that the image itself does not establish, as a matter of undisputed fact, that it is conveying a religious or other message.*

[21]*For example, he alludes to information about the statue from the Smithsonian, other museums, or other locations where the statute has been displayed.*

11

does not provide a basis for concluding that as a matter of undisputed fact.

The court also declines to accept plaintiff's suggestion that, based on Hurley or other cases, that if any message of any sort is conveyed by the license plate image, it violates his First Amendment rights. The court has considerable doubt that the above referenced "open" questions would be resolved in such an expansive fashion, particularly in a context such as this—i.e., in a compelled speech case where the presence of any message in the image is disputed and where even the concept of private speech is at its outer limits. Further, such a claim is not the claim that plaintiff has actually asserted here. As noted above, the First Amended Complaint plainly states that the basis for plaintiff's objection is that the plate and image convey a religious message to which he objects—not that they say "something" or "anything." It may well be, and likely is, that an image of a Native American engaged in an activity commonly associated with Native Americans (shooting a bow and arrow), coupled with the phrase "Native America" and the word "Oklahoma" on the plate conveys some message about Oklahoma being Native America, or being influenced by Native Americans, or some such formulation. But plaintiff's complaint does not challenge that and, as a matter of undisputed fact, plaintiff does not object to any message about Oklahoma as Native America. *See* [Doc. #95, para. 43, not disputed by plaintiff]. In any event, the court concludes plaintiff has not shown a basis for summary judgment on his central claim.

As a result, this case remains for trial as to relevant matters of disputed fact.[22] These

---

[22]*The court recognizes and appreciates that the parties' stipulation has addressed many of the questions that might otherwise require proof at trial.*

include whether the image conveys a particularized message to which plaintiff objects and whether viewers of it would likely perceive that the image conveys the message to which he objects. They also include any issues as to plaintiff's other claims which were not addressed by the summary judgment motions.[23]

For the reasons stated above, the summary judgment motion of the OPS defendants [Doc. #95] is **DENIED**. The motion of the OTC defendants [Doc. #96] is **GRANTED** insofar as plaintiff seeks a specialty plate at no cost, but is otherwise **DENIED**. Plaintiff's motion for summary judgment [Doc. #97] is **DENIED**. The joint motion of the parties to strike the scheduling order [Doc. #107] is also **DENIED**.[24]

**IT IS SO ORDERED**.

Dated this 31st day of December, 2013.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[23]None of the summary judgment motions/briefs address plaintiff's Due Process claim (apparently some sort of "void for vagueness" challenge) or his claim under the Oklahoma Religious Freedom Act. Contrary to the OPS defendants' suggestion [Doc. #101, pg. 23], the fact that a party has not moved for summary judgment on a claim does not mean that the party has abandoned it.

[24]The fact that all parties have *moved* for summary judgment on some ground or other does not necessarily mean that summary judgment is appropriate.

