# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

KEITH CRESSMAN,                          )
                                         )
              Plaintiff,                 )
vs.                                      )          NO. CIV-11-1290-HE
                                         )
MICHAEL C. THOMPSON, in his official     )
capacity as Secretary of State and Security )
and as the Commissioner of Public        )
Safety for the State of Oklahoma, *et al.*, )
                                         )
              Defendants.                )

## ORDER

After remand from the Tenth Circuit Court of Appeals and further proceedings in this

court,[1] this case came on for non-jury trial and hearing on plaintiff's motion for preliminary

injunction on January 9, 2014.[2] The court heard testimony and received other evidence by

stipulation/agreement. This order constitutes the findings and conclusions of the court with

respect to the issues remaining for disposition. *See* Fed. R. Civ. P. 52.

Plaintiff Keith Cressman objects to the image displayed on standard Oklahoma license

plates issued since 2009, arguing that the image conveys a religious message contrary to his

own Christian religious beliefs. In this case, he has sued various officials of the Oklahoma

Department of Public Safety (the "DPS" defendants) and the Oklahoma Tax Commission

(the "OTC" defendants) in their official capacities. He has asserted four different claims as

---

[1]*See* <u>Cressman v. Thompson</u>, *719 F.3d 1139 (10th Cir. 2013), reversing and remanding this court's dismissal of plaintiff's claims in* <u>Cressman v. Thompson</u>, *871 F. Supp. 2d 1176 (W.D. Okla. 2012).*

[2]*The court previously combined plaintiff's motion for preliminary injunction with trial on the merits. Order, October 10, 2013 [Doc. #71].*

the bases for declaratory, injunctive or other relief, all directed to him avoiding potential prosecution for violation of 47 Okla. Stat. § 1113. In pertinent part, § 1113 makes it illegal to operate a vehicle in Oklahoma upon which the license plate is "covered, overlaid, or otherwise screened with any material . . . ." § 1113(A)(2). While plaintiff does not focus on it, 47 Okla. Stat. § 1151(A)(2) also appears to apply to the conduct and circumstances of this case. That section makes it a misdemeanor for any person to, among other things, "alter or in any manner change a . . . license plate . . . issued under the laws of this . . . state." Plaintiff seeks to have the court enjoin the enforcement of § 1113 as to him or to otherwise protect plaintiff's constitutional rights. Specifically, he seeks an order that would permit him to cover, on any standard Oklahoma license plate issued to him, the image to which he objects or, alternatively, an order that would require the State of Oklahoma to issue specialty plates for his vehicles to him at no additional cost.

The court previously determined that the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, precludes this court, in the circumstances of this case, from ordering the issuance of a specialty tag at reduced cost to plaintiff. Order, December 31, 2013 [Doc. #111]. So the remaining question, from the standpoint of available relief, is whether the court should enjoin defendants from enforcing the indicated provisions of law against the plaintiff, in the event he covers the objected-to image in some fashion.

As noted above, plaintiff's amended complaint [Doc. #20] asserts four different claims. His central claim is that his First Amendment right against compelled speech is violated. He also asserts a Free Exercise claim and a Due Process claim, but conceded at the

trial/hearing that these purported claims were not separate from or different than his compelled speech claim. On that basis, the court concluded there was no Free Exercise or Due Process claim upon which plaintiff might recover.

The amended complaint also asserts a claim under the Oklahoma Religious Freedom Act, 51 Okla. Stat. § 251 *et seq*. Defendants object to that claim on the basis of Eleventh Amendment immunity. Plaintiff offered no persuasive basis for avoiding the impact of that immunity as to his state law claim, either by reason of Congressional abrogation of the immunity or due to waiver by the State, and the court concluded at the hearing that the Eleventh Amendment precluded any claim by plaintiff under the Oklahoma act. *See generally* Pettigrew v. Oklahoma, 722 F.3d 1209 (10th Cir. 2013).

Plaintiff's Free Speech (i.e. compelled speech) claim is based on plaintiff's contention that the image now on Oklahoma's standard license plate, which depicts a Native American man shooting a bow and arrow, conveys a message that is contrary to his religious beliefs as a Christian.[3] He contends that being forced to display this image on his vehicle violates his right against compelled speech, as recognized in Wooley v. Maynard, 430 U. S. 705 (1977), and other cases. Defendants raised certain objections to the claim which were previously resolved by the court and will not be discussed further here.[4] They also continue to press,

---

[3]*The evidence established that Mr. Cressman is a Methodist minister and a former practicing attorney.*

[4]*The impact of the Tax Injunction Act and of defendants' argument that the "message" on the license plate, if any, is "government" speech rather than "private" speech was addressed in the court's summary judgment order [Doc. #111].*

in addition to the issues as to the substantive merit of the First Amendment claim, the argument that plaintiff has not shown a basis for standing based on the absence of actual or imminent prosecution of the plaintiff under the challenged statute(s).

The bulk of the background facts relating to the adoption of the current standard license plate, and of the "Sacred Rain Arrow" statue upon which the plate image was based, are undisputed. The parties entered into various stipulations in the Final Pretrial Report [Doc. #113] which the court adopts by reference. Other factual determinations are reflected below in the discussion of the court's conclusions as to the various remaining issues.

Defendants argue that plaintiff lacks standing to pursue these claims. They rely on evidence that plaintiff has extensively used specialty plates on his vehicles in the past and that he has not suffered injury in fact such as is necessary to the standing determination. *See generally*, <u>Cressman</u>, 719 F.3d at 1144-47. Further, the OTC defendants argued, as grounds for their Rule 52 motion, that there was no basis for a claim against them or justiciable controversy as to them as they had no role in enforcing the statute(s) the enforcement of which is still in issue.[5]

The court granted the OTC defendants' motion at the conclusion of plaintiff's evidence, on the basis that they had no role in enforcing the statute at issue.[6] Absent such

---

[5]*As noted above, the court previously concluded the Tax Injunction Act prevents the court from ordering the issuance of a reduced cost specialty plate.*

[6]*Plaintiff argued to the contrary on the basis of 47 Okla. Stat. § 113(A)(2), which authorizes the Tax Commission, in certain circumstances, to "change and direct the manner, place and location of display of any vehicle license plate . . . ." Although its not altogether clear to what extent authority to change the "manner" of display might extend, the court concluded it did not*

4

a role, the elements of causation and redressability necessary to standing are missing and there is no basis for a judgment against these defendants even if plaintiff is otherwise successful as to the substance of his claim.

As to defendants' standing argument related to the claimed absence of injury in fact, the court concludes plaintiff made the necessary showing to establish standing. The Court of Appeals previously determined that plaintiff alleged facts which, if true, were sufficient to establish injury in fact for purposes of standing. Cressman, 719 F.3d at 1145. It noted he alleged he had been informed of potential prosecution and that there was a credible threat of prosecution. It further noted that compelled speech in violation of the First Amendment is injury in fact and that the additional cost of a specialty plate, as a means of avoiding prosecution, is a concrete monetary injury.

The court finds from the evidence offered that plaintiff does in fact object to the message he perceives to be communicated by the image, that he contacted personnel of the Oklahoma Tax Commission and the Department of Public Safety to explain his concern,[7] that

_extend to repealing or avoiding the explicit statutory ban on covering or screening included in the immediately following sentence of the statute. The court does not view this conclusion as inconsistent with the Tenth Circuit's conclusion that the Oklahoma Tax Commission has "relevant enforcement powers." Cressman, 719 F.3d at 1146. That conclusion was based at least in part on the OTC's role in the enforcement of rules regarding specialty license plates, a power it no doubt has. However, because of the Tax Injunction Act, those powers are no longer pertinent here._

_[7]A somewhat remarkable factual dispute emerged as to exactly who plaintiff, or someone, talked to. Plaintiff's testimony, which the court found generally credible on the point, was that he was directed to, and talked to, someone he understood to be Paula Allen, a hearing officer with the Department of Public Safety, and was advised by her (after she talked to a Highway Patrol officer) that he could well face prosecution if he covered the image. Paula Allen, whose testimony at the hearing the court also found to be credible, testified she had a conversation to that general effect_

he was advised that covering the image on the plate was illegal, that he further contacted the Attorney General in pursuit of his position, and that there is in a fact a reasonable prospect of prosecution if he covers the image on the plate. While the evidence established that plaintiff covered the image on one of his plates for a relatively short period of time without being prosecuted, that does not end the issue. A credible threat of prosecution, as opposed to actual prosecution, is sufficient for standing purposes. *See* Ward v. Utah, 321 F.3d 1263, 1267 (10th Cir. 2003). Further, specialty license plates do, in fact, cost more than a standard plate. Hence there is some concrete monetary injury if plaintiff was forced to buy such plates to avoid a prosecution which arguably violated his constitutional rights. Plaintiff has established standing to pursue his compelled speech claim.

The substantive standards applicable to a compelled speech claim are set out more fully in this court's prior orders and the Tenth Circuit's order in this case. Briefly stated, the First Amendment protects not only a person's right to speak freely, but also the right to refrain from speaking at all. Board of Education v. Barnette, 319 U.S. 624, 633-34 (1943). That right potentially extends to being required to convey a message by means of a standard state-issued license plate on a person's vehicle. Wooley, 430 U.S. 705.

As this case, unlike Wooley, involves a challenge to an image on the tag, rather than words or speech, the question is whether the image on the plate is symbolic speech that

---

*with someone, but it was not with plaintiff. She testified she met a man not remotely meeting plaintiff's physical description. Further, plaintiff conceded that the person now known to be Paula Allen is not the person he remembers talking to. In any event, the court finds that plaintiff talked to someone with DPS, expressed his concerns and was advised of the potential application of the statutes to him if he covered the image.*

qualifies for First Amendment protection in this context.[8]  The Supreme Court has indicated that a symbolic act or display will be protected where it is sufficiently imbued with elements of communication to trigger First Amendment scrutiny.  Spence v. Washington, 418 U.S. 405 (1974); Texas v. Johnson, 491 U.S. 397 (1989).  The Spence-Johnson standard is ordinarily understood to require a showing that the act or symbol both (1) reflected an intent to convey a particularized message, and (2) there was a great likelihood that the message would be understood by those who viewed it.  Cressman, 719 F.3d at 1149.  In a compelled speech case, the intent element is deemed satisfied.  Id. at 1154 n. 15.[9]

Later cases have suggested the Spence-Johnson requirement of a "particularized message" may not always be necessary, or at least should not be stringently applied.  In Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston, 515 U.S. 557, 569 (1995), referring to Spence, the Court stated that "a narrow, succinctly articulable message is not a condition of constitutional protection . . . ."  The degree to which that conclusion modified the Spence-Johnson standard is not clear.  The Tenth Circuit's opinion in this case did not decide that question, but did note the varying approaches of other courts of appeal.  This court's review of those decisions suggests that no circuit views Hurley as abandoning

---

[8]*The court disagrees with plaintiff's suggestion that an image like that displayed here is "pure speech."  The Tenth Circuit's discussion of the circumstances in this case does not suggest any such view and it is difficult to see how, as a categorical matter, depicting an image of something can be viewed as necessarily different from depicting some other sort of "symbol."*

[9]*Plaintiff concedes Oklahoma is not attempting to send a religious message by its adoption of the image, but that concession does not assist defendants here.  In a compelled speech case, the issue is essentially whether the requisite message would be understood by those who heard or viewed the image or symbol.*

altogether the <u>Spence-Johnson</u> requirement of showing a "particularized message," but that, in one way or another, they suggest not overdoing the particularity requirement. "Not overdoing it" is neither a classic formulation of a legal standard nor a very useful yardstick to guide courts in cases such as this. Nonetheless, the court concludes that formulation provides sufficient guidance to resolve the present inquiry.

If the court were to require a strict showing of a "particularized message" such as the <u>Spence-Johnson</u> test may have originally contemplated, that might have involved a showing somewhat akin to (though likely less detailed than) what plaintiff alleged to be the basis for his claim. In particular, he alleged that the image to which he objects:

> effectively retells the story of a Native American who believes in sacred objects and in multiple deities and in the divinity of nature and in the ability of humans to use sacred objects to convince gods to alter nature. The underlying message of this story, and of the license plate where the story is depicted, communicates the promotion of pantheism, panentheism, polytheism, and/or animism and those particular Native Americans' social and cultural practices that accept these ideas.

First Amended Complaint [Doc. #20, para. 25]. A less particularized "message" might involve a showing that the image at least conveyed a religious message or theme of some sort. An even less particularized requirement might be that the image conveys a message of any kind. But under any of these standards, the court concludes plaintiff's proof fails.

Viewed by itself, all the disputed image involves is a depiction of a Native American shooting a bow and arrow.[10] There is nothing about the image that suggests the man is

---

[10]*A copy of the license plate is attached to this order.*

praying or that the arrow he is shooting is sacred. There is nothing about the image that suggests he is worried about rain, or the lack thereof. There is nothing about the image that suggests he believes in one god, no god, or several. It simply depicts a Native American shooting a bow and arrow.

Plaintiff indicates he objects to the image because of other things he learned about it through research, triggered by various news reports in 2008-2009 indicating that the image was based on a sculpture, the "Sacred Rain Arrow" sculpture created by artist Allen Houser. The evidence established that Houser's sculpture was "inspired by the story of a young Apache warrior who was chosen to shoot a sacred arrow carrying his people's prayer for rain to the Spirit World" and that this information is reflected on plaques or other explanatory media in the various locations where the "Sacred Rain Arrow" statue is displayed.[11] The evidence also established that Mr. Houser was a relatively well-known artist, receiving various honors in Oklahoma and elsewhere. But various factors prevent these facts, learned through research, from leading to the result plaintiff seeks. First, they are the result of research, not things a person would ordinarily know from common knowledge or sense just from looking at the image on the license plate. The fact that additional research is necessary to know or identify the message of which plaintiff complains is itself "strong evidence" that the image, as such, is not subject to constitutional protection. *See* <u>Rumsfeld v. Forum for Academic and Inst. Rights, Inc.</u>, 547 U.S. 47, 66 (2006). Second, the image depicted on the

---

[11] *One location is at the Gilcrease Museum in Tulsa, Oklahoma. Others are in Washington D.C. and other locations.*

standard Oklahoma license plate is not an exact replica of Houser's statue. The evidence established that the plate image was based on the statue, but was not identical to it.[12] The original statue involves a Native American shooting his arrow almost vertically into the air, a pose which arguably is more suggestive of a spiritual motive or connection than might be involved with aiming at a more conventional target. The image on the plate, by contrast, involves a Native American holding the bow and arrow at approximately a 60 degree angle relative to the ground or horizontal plane, a pose consistent with a variety of scenarios in which a bow and arrow might be used.[13] Therefore, even if a person were to do the research plaintiff did as to the history of the license plate and of the "Sacred Rain Arrow" statue, that would not necessarily lead to the conclusion that Oklahoma was intending to send, by its adoption of the image, the same message that Mr. Houser had in mind or intended to depict.

In the court's view, and as plaintiff substantially conceded at the hearing,[14] the essential question is what a reasonable observer of the image on the license plate would understand from it. In light of Hurley's suggestion that the Spence-Johnson test should not be too rigorously applied, the court further concludes the question is not whether there is a "great likelihood" that a particular message would be understood, but simply whether it is

---

[12]*Various news reports at the time of the new plate's adoption did not make this distinction, and suggested that the plate image was an exact image of Houser's statue. However, the parties do not dispute, and the court finds, that there are differences as indicated.*

[13]*The kneeling position of the man also appears to be somewhat different.*

[14]*Plaintiff conceded the test was essentially an objective one, but did not necessarily characterize it as a "reasonable observer" standard.*

reasonably likely that it would. Further, as noted above, <u>Hurley</u> counsels against an overly stringent requirement for a showing of a "particularized" message.

Applying these standards, the court concludes that a reasonable observer would not be likely to conclude that an identifiable message was conveyed simply from the inclusion of the image on the standard state license plate.[15] Without further research, it is simply a depiction of an Indian shooting a bow and arrow. A reasonable observer, even one living in Oklahoma, would not be likely to know of Allen Houser's intentions or thoughts in creating the "Sacred Rain Arrow" statue or of the legend behind it, even if the observer assumed the image was an exact replica of the statue. The average Oklahoman or other reasonable observer is unlikely to have seen the specific background information plaintiff submitted or to have made the connection to the plate that plaintiff relies on.[16]

Of course, the Oklahoma standard license plate, taken as a whole and not focusing purely on the disputed image, does convey some message. The plate also prominently

---

[15]*Indeed, were it pertinent, the court would also find or conclude that a reasonable observer would not understand plaintiff (or any owner or operator of a vehicle) to be endorsing or implicitly adopting <u>any</u> message simply by displaying a standard state license plate. A reasonable observer can tell the difference between a standard plate and a specialty, or vanity, plate. A reasonable observer would understand that, by displaying the standard state plate, the owner/operator was doing nothing more than displaying what the state issued. However, <u>Wooley</u> concludes that simply displaying the standard license plate is potentially enough to be the basis for a compelled speech violation, on the basis that the plate serves as a sort of "billboard" communicating someone's ideas.*

[16]*Plaintiff's various exhibits—copies of press releases, news reports at the time referencing the Houser statue and various indications of the legend behind it—are some evidence of what a reasonable observer might know or understand from the image. But a few isolated news reports, or detailed facts obtainable only by further research, are insufficient to establish what a reasonable observer, as opposed to a "reasonably diligent researcher," would be likely to know or understand.*

includes the word "OKLAHOMA" and the words "NATIVE AMERICA". A reasonable observer would likely assume something akin to what the evidence suggests Oklahoma was trying to convey—that Oklahoma is Native America, or some formulation similar to that. However, plaintiff has made it clear, both at the hearing and in the various pretrial submissions, that he does not object to anything suggesting or promoting the idea that Oklahoma is Native America.

For the reasons stated, the court concludes that plaintiff has not established a violation of his Free Speech rights, even assuming the continuing vitality of <u>Wooley</u>. Judgment will be entered for the OTC defendants and the DPS defendants as to all claims.

The absence of a constitutional violation does not, of course, mean that plaintiff lacks a practical solution to the problem as he sees it. Oklahoma provides a simple, inexpensive, and readily available alternative, in the form of a specialty plate, for those who object to any aspect of a standard plate, an option which plaintiff has exercised both before and since his concerns with the current standard license plate arose.

**IT IS SO ORDERED**.

Dated this 14th day of January, 2014.

JOE HEATON
UNITED STATES DISTRICT JUDGE

